## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **NAPPER** *et al.* | **Plaintiffs** |
| v. | No. 3:20-cv-764-BJB-RSE |
| **HANKISON** *et al.* | **Defendants** |

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

This case arises from events surrounding Breonna Taylor's death that are familiar to the parties and many others. The Court need not recount that background in order to decide the pending motion for a stay. This particular case, one of several touching on Taylor's death, stems from allegations that officers' gunfire entered a neighboring apartment where Chelsey Napper, two minor children, and Cody Etherton lived.

These individuals, Plaintiffs here, argue that the acts of ten individual Defendants and two government Defendants violated the Plaintiffs' state and federal constitutional rights. After the Plaintiffs sued, a grand jury indicted one of the individual Defendants—former Louisville Metro Police Department Detective Brett Hankison—for three counts of wanton endangerment. That criminal charge indisputably relates directly to the civil claims the Plaintiffs assert against Hankison based on that night's events. And because simultaneous criminal and civil cases could prejudice Hankison's ability to defend himself in each, and could hinder the public's and this Court's interest in the efficient resolution of these proceedings, the Court **GRANTS IN PART** Hankison's request that the Court stay the civil proceedings against him in this case. But the stay will not necessarily run indefinitely until the state-court criminal proceedings finish. The parties

may ask the Court to revisit the need for a stay following any significant developments in the criminal or civil cases that bear on this decision.

## I.     The procedural posture of the cases involving Hankison

The Plaintiffs initially filed this suit in state court on May 20, 2020. *See* DN 1-2. A grand jury indicted Hankison, initiating the state-court criminal litigation, on September 23, 2020. *Kentucky v. Hankison*, Jefferson Circuit Court, Indictment No. 20-cr-1473. Less than a week later, the state court stayed all discovery in the civil suit pending the resolution of the related criminal investigation and proceedings. *See* State Court Stay Order [DN 1-5] (exempting the Public Integrity Unit investigative file). The Defendants removed this case to federal court on November 13, 2020.

The Plaintiffs' Second Amended Complaint advances a host of legal theories involving excessive force, failure to train and supervise, failure to intervene, conspiracy, the Establishment Clause, and municipal liability for an alleged policy or custom of constitutional violations. These claims arise under the U.S. Constitution (First, Fourth, and Fourteenth Amendments), the Kentucky Constitution (sections 1, 2, 5, 10, and 14 of the Bill of Rights), and 42 U.S.C. §§ 1983 & 1985. *See* Second Amended Complaint [DN 8] ¶¶ 128–53, 180–235.

The Second Amended Complaint also advances several species of tort liability: intentional torts including assault, battery, false arrest, false imprisonment, and intentional infliction of emotional distress, *id.* ¶¶ 154–66; negligent hiring, retention, and supervision, *id.* ¶¶ 167–79; and negligent infliction of emotional distress, *id.*

With the exception of Hankison, each Defendant has moved to dismiss all of these claims. *See* DNs 12, 28, 31, 32. Only Hankison seeks a stay, and this Order addresses only that Motion [DN 27].

## II. The legal basis for the Court's consideration of the stay motion

District courts possess inherent power and broad discretion to grant a stay. "The power to stay proceedings," the Sixth Circuit has explained, "is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *FTC v. E.M.A. Nationwide*, 767 F.3d 611, 626–27 (6th Cir. 2014) (quoting *Ohio Env't. Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977)).

Several factors bear on whether and when a trial court's exercise of this discretion to stay a civil lawsuit is appropriate in the context of a parallel criminal proceeding:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case;
> 2) the status of the case, including whether the defendants have been indicted;
> 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;
> 4) the private interests of and burden on the defendants;
> 5) the interests of the courts; and
> 6) the public interest.

*Id.* at 627. As part of this multi-factor analysis, courts "should consider the extent to which the defendant's fifth amendment rights are implicated." *Id.* (quotation marks omitted).

Hankison, the party seeking the stay, bears the burden of showing a "pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Id.* at 627–28 (quoting *Ohio Env't. Council*, 565 F.2d at 396).

## III. Hankison has carried his burden to justify a stay

These considerations set forth by the Court of Appeals guide the Court's discretion in deciding this motion. And they cut in different directions with respect to Hankison's stay request. The motion implicates a fundamental constitutional right against self-incrimination, while the

Plaintiffs' opposition brief raises important concerns regarding the speedy and just determination of civil suits. And each side's arguments bear on this Court's and the public's broader interests in efficient court proceedings. Collectively, these considerations tilt in favor of granting a stay—though not an indefinite one.

The significant (and arguably total) overlap between the facts underlying the criminal and civil cases facing Hankison plainly militates in favor of a stay. And Hankison has been indicted for his role in the events that form the basis of each suit. *See E.M.A.*, 767 F.3d at 628. The Plaintiffs do not dispute these first two factors, which support the stay request. Trial courts within the Sixth Circuit have treated this scenario—"a party under indictment for a serious offense[,] required to defend a civil or administrative action involving the same matter"—as "the *strongest case* for deferring civil proceedings until after completion of criminal proceedings." *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) (emphasis added). *See also S.E.C. v. Abdallah*, 313 F.R.D. 59, 64 (N.D. Ohio 2016) (civil cases "likely involv[ing] many of the same issues, witnesses, and evidence" as a criminal case weighed in favor of a stay); *Bunch v. Foley*, No. 1:15-cv-1114, 2015 WL 7871051, at *2 (W.D. Ky. Dec. 3, 2015) (overlapping series of events giving rise to "the core of both cases" supported a stay).

The balance of hardships—which the Sixth Circuit has identified as the most important factor, *E.M.A.*, 767 F.3d at 628—is necessarily more equivocal here: it accounts for hardships on both sides of the ledger. Litigating the civil suit now, according to Hankison, would put him to a difficult and consequential choice: either waive his Fifth Amendment privilege and potentially incriminate himself through testimony or discovery responses, or else take the Fifth and potentially

4

allow civil jurors to draw an adverse inference from his silence.[1] *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."). This conundrum is not unique to Hankison, and is not by itself dispositive. *Cf. United States v. Conn*, No. 11-157, 2016 WL 4803970, at *7 (E.D. Ky. Sept. 9, 2016) (the Fifth Amendment dilemma is not uncommon for individuals facing simultaneous civil and criminal jeopardy). Yet courts within this district have nevertheless recognized that this self-incrimination concern represents a significant "hardship" for the defendant that weighs in favor of a stay. *See Clark v. Louisville Jefferson Cty. Metro Gov't.*, No. 3:17-cv-419, 2019 WL 4317057, at *3 (W.D. Ky. Sept. 11, 2019) (likely invocation of Fifth Amendment privilege in overlapping cases weighed in favor of stay).[2]

The other "hardships" courts balance include prejudice in the form of "delayed justice." *See* Opposition at 7–8. The Plaintiffs here, like all plaintiffs, doubtless have an interest in the timely resolution of their lawsuit. Indeed, Federal Rule of Civil Procedure 1 instructs courts to pursue a "just [and] speedy" resolution "of every action and proceeding." *Accord Conn*, 2016 WL 4803970 at *8. This interest in swift(er) justice and remediation, however, is common to all civil plaintiffs. A more powerful showing would point to a particularized need for testimony, evidence, or adjudication that a stay might deny these Plaintiffs. But the Opposition includes no such contention. It asserts (at p. 8) that the Plaintiffs can conclude discovery within a matter of months, but identifies no risk that a longer period of time would pose to their case. This makes sense; as a

---

[1] The Plaintiffs argue that Hankison has already waived his Fifth Amendment privilege. *See* Opposition [DN 29] at 12. But as Hankison's Reply notes, [DN 37] at 3, this question is not properly before the Court.

[2] Regardless of whether the stay analysis must account for *all* Defendants or just the movant, *see* Opposition at 8, at least some of the Defendants have no objection to Hankison's motion, *see* DN 35, and the assumption that the other Defendants might object is speculative.

5

practical matter, the Court must adjudicate no fewer than four pending dispositive motions before the parties can be expected to begin discovery in earnest, much less conclude it. So any hypothetical and generalized hardship faced by the Plaintiffs, during a period when the case would otherwise remain largely dormant, is less weighty than the concrete and specific hardship faced by Hankison from testifying in his civil trial, during a period when his criminal case is ongoing.

The final factors—the interests of the public and the Court—confirm that the balance tips in favor of pausing Hankison's discovery and pleading obligations. The parties do not discuss how this civil stay would affect progress in the underlying criminal case. But to the extent it had any effect at all, parallel federal-court proceedings would render the state-court case more, rather than less, complicated. To be sure, this Court has a "duty to bring cases to a conclusion quickly and efficiently." *Conn*, 2016 WL 4803970, at *8. But so does the state court. *See* U.S. Const., Art. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial…."); *Klopfer v. North Carolina*, 386 U.S. 213, 223–26 (1967) (Sixth Amendment speedy-trial right applies to the states).

A broader interest is also at stake: the public's interest in the fair and just prosecution of offenses against the entire community. This marks a fundamental difference between this civil suit—testing the rights of private parties seeking to recover for past harm and enjoin future violations—and a criminal prosecution—brought on behalf of the people of the Commonwealth, through their elected officials, to punish offenses that lawmakers have determined harm the community as a whole. "Prosecution and conviction of the guilty are fundamental public concerns." *Prudential Ins. Co. v. Blanton*, 118 F. Supp. 3d 980, 985 (N.D. Ohio 2015). A grand jury indicted Hankison for wanton endangerment, a serious charge that affects the public in a serious way. The law continues to presume him innocent until proven guilty, and it will be up to

the state-court judge and jury to weigh the charges and evidence. This "publi[c] interest in effective criminal prosecution," courts have recognized, "generally outweighs any existing civil interests." *Abdallah*, 313 F.R.D. at 64. None of which diminishes the Plaintiffs' alleged injuries, or the vindication of their own constitutional liberties in court. This, too, serves the public. But when weighing these interests, as the law of the Sixth Circuit requires, the Court must consider that both proceedings serve this goal of speedy and public justice: a "stay would not necessarily delay enforcement of the public interests because a criminal prosecution serves to enforce those same interests." *Chao*, 498 F. Supp. 2d at 1038 (quotation marks omitted).

The benefits a stay would offer this Court, while perhaps ranking lower than the interests of the people and the parties, nevertheless merit recognition as well. The Court faces competing claims from many litigants awaiting justice, and must economize proceedings as much as possible to serve the public's need for timely determination of legal rights. Staying this case would avoid thorny questions of privilege and prejudice that could arise during discovery, prioritize the motions already pending in this case, and respect the press of business in other cases. *See E.M.A.*, 767 F.3d at 628 ("the district court must…consider whether granting the stay will further the interest in economical use of judicial time and resources") (cleaned up). A court's "management of its docket" and "efficient use of judicial resources" properly bears on whether to stay discovery, Moore's Federal Practice § 56.07(3)(c) (3d ed. 1997), and "the resolution of the criminal proceedings may serve to expedite the civil proceedings, avoiding the needless expense of judicial time and resources," *Abdallah*, 313 F.R.D. at 65.

Also worth noting is the Plaintiffs' failure to propose any specific ways in which the Court might reconcile their interest in speed with Hankison's hardship and the Court's efficiency. The Opposition simply asks the Court to deny the stay—without making an attempt to parse, for

7

example, categories of discovery that might prove more time-sensitive or less prejudicial. If the brief had, the Court might have confronted a less stark choice.

Left with those two all-or-nothing options, however, the Court exercises its discretion to conclude that a stay with respect to Hankison is appropriate at this time. But the stay will be narrower than the one Hankison requests. Given the dynamic nature of both lawsuits, open-ended delay is unnecessary. The Court will limit the stay to discovery and other litigation obligations that would materially implicate Hankison's exercise of his Fifth Amendment rights. The Court also will require Hankison to submit status reports describing the posture of his criminal case, and its relationship to this civil litigation, every 90 days. Should a change in circumstances provide the Plaintiffs with a good-faith basis to revisit the stay factors described here, they may submit a motion to lift the stay in whole or in part.

## ORDER

The Court:

1. **GRANTS IN PART** Hankison's Motion to Stay [DN 27];

2. **STAYS** Hankison's discovery, pleading, and other pre-trial obligations that would implicate his Fifth Amendment rights; and

3. **ORDERS** that Hankison submit a report detailing the status of his criminal case and its relationship to this case every 90 days.

Benjamin Beaton, District Judge
United States District Court

February 5, 2021