UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**NAPPER** *et al.*                                                                                       **Plaintiffs**

v.                                                                                             No. 3:20-cv-764-BJB-RSE

**HANKISON** *et al.*                                                                                   **Defendants**

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

This case arises from events surrounding Breonna Taylor's death that are familiar to the parties and many others. The Court need not recount in full that background in order to decide Defendant Joshua Jaynes's pending motion to dismiss. This particular case, one of several touching on Taylor's death, stems from allegations that officers' gunfire entered a neighboring apartment where Chelsey Napper, two minor children, and Cody Etherton lived. These individuals, Plaintiffs here, argue that the acts of ten individual Defendants—including Jaynes—and two government Defendants violated the Plaintiffs' state and federal constitutional rights.

Jaynes moves the Court to dismiss the Plaintiffs' Second Amended Complaint as it applies to Jaynes for failure to state a cognizable legal claim against him. *See* Motion to Dismiss [DN 12]. After reviewing the Plaintiffs' opposition papers and holding oral argument, the Court grants Jaynes's motion to dismiss.

### DISCUSSION

To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff shows that it is entitled to relief by "plausibly suggesting" that it can establish the elements of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "And a plaintiff's suggestion is plausible when it contains enough factual content that the court can reasonably infer that the defendant is liable." *Doe v. Baum*, 903 F.3d 575, 580 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts must accept all the plaintiff's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and determine whether those facts and inferences plausibly entitle the plaintiff to relief. *Iqbal*, 556 U.S. at 679.

Jaynes's motion to dismiss offers four independent bases for dismissal: (1) Plaintiffs fail to state a claim against him where they barely mention him in the complaint and fail to name him in any of the specifically enumerated causes of action, (2) Plaintiffs lack standing to challenge the constitutionality of the search warrant affidavit allegedly prepared by Jaynes, (3) Jaynes is entitled to qualified immunity for any actions related to the preparation of the search warrant affidavit, and

(4) violation of departmental standard operating procedures do not create a private cause of action. *See* Motion to Dismiss.

In opposition to Jaynes's motion to dismiss, the Plaintiffs admit that the complaint is "inartfully drafted with respect to Jaynes specifically." Opposition [DN 33] at 5. What we are referring to as the "complaint," it bears noting, is not actually the Plaintiffs' first complaint, or even their first amended complaint. The complaint at issue is in fact the Second Amended Complaint [DN 8]. Within that 237-paragraph pleading, the Plaintiffs identify 14 paragraphs that, they contend, contain "information and factual content … relevant to Jaynes's motion to dismiss." Opposition at 6–8. Some of these 14 paragraphs mention alleged errors by Jaynes in preparing the search warrant affidavit and the "risk assessment matrix" related to the warrant application. *Id.* at 7–8 (citing ¶¶ 51–52, 60–63, 89–92). Three additional paragraphs, the Plaintiffs maintain (*id.* at 8 (quoting Second Amended Complaint ¶¶ 175–77)), contain the legal claim or claims they assert against Jaynes:

> ¶ 175. Defendants Chief Steve Conrad (Ret.), Lt. Jerry Huckleberry and Defendant Mattingly were superior officers to Defendants Jaynes, Hankison and the other individual Defendants. Each owed Plaintiffs a duty of care to properly supervise Defendants Jaynes and Hankison and the other individual Defendants with respect to procurement and implementation of the search warrant process according to LMPD SOP, especially SOP 8.1, as well as the mandatory involvement of SWAT in serving a "No-Knock" warrant and the use of excess force considering the foreseeable consequences thereof.
>
> ¶ 176. All individual Defendants breached their duty of care by not properly supervising *each other* the night of March 13, 2020, when they negligently served a search warrant in the absence of SWAT and in violation of LMPD SOP 8.1 when the Plaintiffs where subjected to unreasonable risk of death and injury.
>
> ¶ 177. All individual Defendants acted in an objectively unreasonable fashion. They engaged in ultrahazardous activity as contemplated and defined by the Kentucky Supreme Court in *Randall v. Shelton*, 293 S.W.2d 559 (Ky. Ct. App. 1956) by firing their guns into and at the Plaintiffs apartment for no legitimate reason toward the Plaintiffs. Accordingly, they are strictly liable.

The first paragraph (¶ 175) plainly does not state a claim against Jaynes: it asserts a claim for negligent supervision, blaming three of Jaynes's supervisors for not adequately supervising him. This pleads negligence with respect to Jaynes, not *by* Jaynes: "Defendants Chief Steve Conrad (Ret.), Lt. Jerry Huckleberry and Defendant Mattingly … *owed Plaintiffs a duty of care to properly supervise Defendants Jaynes*." *Id.* (emphasis added).

The second paragraph (¶ 176) likewise refers to negligent supervision, though in a communal sense: "all … not properly supervising *each other*." (emphasis in original). Setting aside the unusual nature of the Plaintiffs' conception of supervision, the Second Amended Complaint contains no factual allegations that Jaynes bore or violated any supervisory responsibilities. The prior paragraph indicates that three LMPD leaders supervised Jaynes, but nothing alleges Jaynes supervised anyone else, including those who allegedly "negligently served a search warrant in the absence of SWAT and in violation of LMPD SOP…." Second Amended Complaint ¶ 176. And the Plaintiffs admit that Jaynes was not near the Plaintiffs' residence, but was instead "with the SWAT Team while they served the warrants at Elliott Avenue." Opposition at 21.

The third paragraph (¶ 177) describes a different claim altogether—one based on strict liability for the "ultrahazardous activity" of firing guns into and at the Plaintiffs' apartment. Again, however, Jaynes did not fire a gun and was not on the scene for the allegedly ultrahazardous activity. Yet that third paragraph contains the strict-liability theory that the Plaintiffs feature in the opposition brief they filed in response to Jaynes's motion to dismiss. Plaintiffs' counsel admitted at argument, *see* Transcript [DN 61] at 8, that the paragraph reproduced below was the most succinct statement of their claims against Jaynes as they "currently exist":

> Taken together and read in totality, this information and factual content of the Plaintiffs' Second Amended Complaint states a plausible claim … that Jaynes was incompetent because he knowingly violated or was grossly negligent or reckless in violating LMPD Standard Operating Procedure[] 8.1 which was a ministerial not discretionary function thereby denying him qualified immunity under federal and state law and rendering him strictly liable for the foreseeable [] consequences that constitutional rights could be violated by the ultrahazardous activity of firing guns at the Plaintiffs' apartment and toward the Plaintiffs for no legitimate reason pursuant to *Randall v. Shelton*, 293 S.W.2d 559 (Ky. Ct. App. 1956).

Opposition at 9 (cleaned up). The Court understands this paragraph to assert a somewhat amorphous legal theory: strict liability for ultrahazardous activity, based on negligence/recklessness.[1] The Plaintiffs argue Jaynes "was grossly negligent or reckless" in violating Standard Operating Procedures, "*rendering him strictly liable* for" the foreseeable consequences of the "ultrahazardous activity" of firing weapons. *Id.* (emphasis added).

---

[1] The Plaintiffs' argument and briefing tended to refer to negligence (or sometimes gross negligence) and recklessness as a single species of liability. *See, e.g.*, Opposition at 9; Transcript at 9–10. Absent any clarification from the Plaintiffs regarding the legal significance, if any, between the two in this context, the Court likewise treats them as a single theory of liability asserted with respect to Jaynes.

Counsel further parsed the allegations at oral argument, acknowledging that the Plaintiffs have no "ultrahazardous activity" claim against Jaynes:

> THE COURT: You cite case law or at least one decision addressing ultrahazardous activity. You're not taking the position … that preparing a warrant application or serving a warrant is considered, as a legal matter, to be ultrahazardous activity, are you?
>
> MR. SEXTON: No, sir.

Transcript at 12. To the extent strict liability (or "negligence per se") is distinct from the Plaintiffs' conception of ultrahazardous activity, moreover, counsel also abandoned that theory:

> THE COURT: Is your position today that this is strict liability or not? Negligence obviously does not sound in strict liability.
>
> MR. SEXTON: That is correct, Judge. The state—any state claims other than—the negligence per se is under state law, and I'm happy to dismiss those and forego those based on the federal claims being much stronger. The negligence per se under state law is not—is just not necessary to pursue.

*Id.* at 9. Indeed, Plaintiffs' counsel proceeded on a theory of negligence or recklessness, not strict liability, throughout the oral argument on this motion:

> THE COURT: I understand that your position is that he acted incompetently, but, of course, at this stage we're concerned on whether there is a viable cause of action to allow your claim to proceed.
>
> MR. SEXTON: Yes, sir. And, therefore, it would be on a gross negligence or reckless basis….

*Id.* at 9–10; *accord id.* at 22 ("THE COURT: My understanding based on what [Mr. Sexton] said today, which has clarified the pleadings, it sounds like he's limited his plaintiffs' claims against Jaynes to a theory of negligence or perhaps gross negligence.").

This refinement of the legal theory creates a problem for the Plaintiffs: they never pled negligence or recklessness against Jaynes in any of their complaints. None of the three paragraphs the opposition brief identified in the Second Amended Complaint mention it. Counsel, to his credit, appeared to acknowledge as much by indicating (for the first time) that a motion for leave to further amend the pleadings would be in order. *See* Transcript at 6.

Based on the allegations in the Second Amended Complaint currently before the Court, however, the Plaintiffs cannot "plausibly suggest[]" that they can establish the elements of a claim they have not yet asserted. *See Twombly*, 550 U.S. at 557; *see also* Fed. R. Civ. P. 8(a)(2) (A

"short and plain statement of" a claim must "show[] that the [plaintiff] is entitled to relief."). Across three complaints, the Plaintiffs have not alleged the negligence or recklessness claim against Jaynes that they now rely on.  So the Court grants Jaynes's motion to dismiss.  *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) ("The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint.") (citing 2 Moore's Federal Practice ¶ 12.34[2] (3d ed.) ("In deciding whether to dismiss, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the judge may take judicial notice.")).  The point of a Rule 12(b)(6) motion is to "test[] the sufficiency of the allegations within the four corners of the complaint," and courts have no basis to "consider evidence or allegations outside the four corners of the complaint." *Waller v. City & County of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019); *see also Faber v. Smith*, No. 17-2523, 2018 WL 6918704, at *2 (6th Cir. June 6, 2018) ("A plaintiff cannot raise new legal claims in response to a dispositive motion filed by the defendant."); *Cox v. CSX Trans.*, No. 3:19-cv-602, 2020 WL 807536, at *3 (W.D. Ky. Feb. 18, 2020) (refusing to consider a plaintiff's "johnny-come-lately negligence claim" raised for the first time in response to a motion to dismiss).

Because the Plaintiffs fail to state a claim for a negligence or recklessness theory of recovery, the Court declines to address the merits of Jaynes's alternative arguments for dismissal, including that the Plaintiffs lack standing to object to a warrant and search that concerned someone else's property, and that the Plaintiffs' theory of liability with respect to Jaynes is unduly speculative since it relies on the applicability of No-Knock Warrant provisions to a warrant executed in a different manner.  Motion to Dismiss at 6–8; *cf. Walternburg v. St. Jude Med., Inc.*, 33 F. Supp. 3d 818, 837 n.13 (W.D. Ky. 2014) ("Because the Court finds that Plaintiffs' … claim is not cognizable…, the Court need not address Defendants' alternative argument….").[2]  Should the Plaintiffs seek to revive their suit against Jaynes, these are among the issues they would need to address.

Nor will the Court now address the request of Plaintiffs' counsel, offered for the first time during oral argument, for leave to file a third amended complaint.  Counsel for Jaynes and the other Defendants objected vigorously to such a request at this stage of these complex proceedings, and the Plaintiffs would bear the burden of justifying still another bite at this apple.  *See Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006) (a "request for leave to amend" a complaint must "state the grounds for relief with particularity").  "A party seeking leave to amend," of course, "must file a motion stating its grounds for amending the complaint with particularity." *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 647 (N.D. Ohio 2014).

---

[2] The Plaintiffs' opposition failed to respond to Jaynes's argument that the Plaintiffs lacked standing, Motion to Dismiss at 4–5, and likely conceded that point by leaving it unrebutted.  *See Allstate v. Global Med. Billing*, 520 F. App'x 409, 412 (6th Cir. 2013) ("Plaintiff's failure to respond to Defendants' attack on its standing … amounts to a waiver of the argument).  When confronted with the issue at oral argument, counsel pointed to a standing argument the Plaintiffs raised in response to a different motion by a different defendant on a quite different legal claim.  *See* Transcript at 25–27 (referring to page 7 of Plaintiffs' response to Louisville Metro motion to dismiss).  The response Plaintiffs' counsel identified addressed their purported standing to raise an *Establishment Clause* claim regarding Louisville Metro training materials.  Opposition to Defendants' Motion to Dismiss [DN 41] at 7–8.

## ORDER

The Court GRANTS Jaynes's motion to dismiss.

Benjamin Beaton, District Judge
United States District Court

March 26, 2021

cc: counsel