UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CHELSEY NAPPER, ET AL.**                                                          **PLAINTIFFS**

v.                                                                         No. 3:20-cv-764-BJB

**BRETT HANKISON, ET AL.**                                                          **DEFENDANTS**

\*\*\*\*\*

### ORDER ACKNOWLEDGING AND GRANTING IN PART SETTLEMENT WITH MINOR PLAINTIFFS

  Counsel for the Plaintiffs and Defendant Brett Hankison recently informed the Court that they've resolved all claims against Hankison in this long-running litigation. Because two of the Plaintiffs are minors—Z.F. and B.E., children of co-Plaintiffs Chelsey Napper or Cody Etherton—counsel have jointly requested the Court's approval of their settlement agreements with Hankison. DN 157. But under Kentucky law, no such judicial approval is necessary for settlements of less than $25,000. And, as discussed below, no separate federal statute or rule supplies a different standard. So because the parties have attested that the conditions of KRS § 387.278(1) are satisfied, they may settle this case without substantive judicial review and approval.

\*

  This case involves claims by Z.F. and B.E. that arise under both federal and state law. The Court has jurisdiction over the federal-law claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a). All interested parties ask the Court to review and approve the agreed resolution of those minors' claims. Significantly complicating the analysis, however, is the lack of clarity regarding the source (or sources) of law calling for the sort of judicial review of settlement agreements that the parties seek. This is particularly true because the settlement covers both federal and state claims.

  Ordinarily, federal courts exercising supplemental jurisdiction apply state substantive law and federal procedural law to state-law claims—just as they would under the *Erie* doctrine when exercising diversity jurisdiction. *See Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 744 (6th Cir. 1999). But courts have disagreed about whether settlement-approval rules are substantive or procedural.

  Some decisions treat uncodified federal practice envisioning judicial approval of minor settlements as a binding rule of procedure that applies in federal court, regardless of whether the claims at issue sound in state law. *See, e.g., Hargrove v. Jefferson County Bd. of Educ.*, No. 3:15-cv-806, 2022 WL 188190, at \*3 (W.D. Ky. Jan. 20, 2022) ("Because the plaintiffs here are asserting federal-law claims in a federal

1

forum, the Court is not bound by … any other state law governing the procedures for court approval of settlements…. The Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in the federal courts ….") (cleaned up).[1] Other courts have deferred to state rules concerning settlement approval. *See, e.g.*, *Elmore v. Mansfield*, No. 3:11-cv-5088, 2013 WL 2666167, at *1 (W.D. Mo. June 12, 2013) (applying state law in denying without prejudice motion to approve minor's settlement of § 1983 claim and pendent state-law claims); *cf. In re Smithland Towing & Construction, LLC*, No. 5:18-cv-113, 2024 WL 504027, at *2 (W.D. Ky. Jan. 2, 2024) ("Federal courts that have considered the question have held that 'judicial approval of settlements involving minors [is] a matter of substantive state law.'") (admiralty jurisdiction) (quoting *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 419 (7th Cir. 2015)).[2] In some instances, however, courts haven't explained whether and to what extent federal or state law applies. Or they have recognized that the payoff of a detailed *Erie*-style analysis is limited, because the outcome would be identical no matter which law applies. *See, e.g.*, *Greenberg v. Puppy Dogs and Ice Cream*, No. 20-cv-2125, 2021 WL 1753640, at *1–2 & n.1 (S.D. Cal. Mar. 19, 2021) (collecting cases and holding that the Court "need not decide whether" to apply the Ninth Circuit's "best interests of the minor" analysis "or state rules … because the outcome under both is the same.").

Here the choice is potentially meaningful: state statutory law exempts a settlement of this size from any judicial approval while federal caselaw (albeit limited and murky) suggests that a judge should at least consider the child's interests before approving dismissal under a settlement.

The state law that would apply to state claims in state court is plain. As cited by counsel, *see* DN 157 at 1, K.R.S. § 387.278 authorizes "[a] person having legal custody of a minor" to "enter … a settlement agreement with a person against whom the minor has a claim" if no guardian or conservator has been appointed, the settlement amount is less than $25,000 and is paid according to statutory procedures,

---

[1] *See also, e.g.*, *Kiel by Kiel v. Barton*, No. 09-cv-15053, 2011 WL 13206189, at *1 (E.D. Mich. Jan. 31, 2011) ("With respect, this is federal court, in which the Federal Rules of Civil Procedure apply, not Michigan's court rules.").

[2] *See also, e.g.*, *In re Peanut Corp. of America*, No. 6:10-cv-27, 2010 WL 3463212, at *4 (W.D. Va. Aug. 25, 2010) (applying Virginia law to evaluate settlement of minor's claim against corporation in chapter 7 bankruptcy); *M.E. v. United States*, No. 4:05-cv-396, 2006 WL 1556794, at *1 (E.D. Mo. June 1, 2006) (using state law to determine whether the district court should approve a settlement on behalf of a minor); *Nice v. Centennial Area School District*, 98 F. Supp. 2d 665, 668–69 & n.5 (E.D. Pa. 2000) (same); *Carter v. Fenner*, 136 F.3d 1000, 1007–09 (5th Cir. 1998) (holding that failure to follow procedures required by Louisiana domestic relations law to compromise minor's claim rendered consent judgment on § 1983 claim void); *In re Smith*, 926 F.2d 1027, 1029 n.3 (11th Cir. 1991) (noting that trial courts "may consider state law in evaluating whether" a settlement of a minor's federal-law claim violates public policy).

2

and the custodian attests that the settlement will fully compensate the minor. This provision was enacted in 2022 and amended in 2024.[3]

But the law that would apply to federal claims in federal court is less clear: no statute or federal rule (at least none cited in the papers) appears to control. Courts have nevertheless held that judges may (and perhaps should) review minors' settlements before granting approval: they "may look behind" an agreed resolution to "ma[k]e an independent determination that the settlement [i]s in the minor's best interest." *Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997). The "inherent powers" of a district court, according to the Sixth Circuit, at least permit and perhaps require judges to review settlements involving minors for "collusion or other improper conduct giving rise to the dismissal." *Id.* (citing *United States v. Mercedes Benz of North America*, 547 F. Supp. 399, 400 (N.D. Cal. 1982)). This helps "safeguard [the] interests of persons entitled to the court's special protection," including children and others incapable of protecting their own legal interests. *Id.* As other courts have recognized, "since the parties' settlements here involve minors," who "are asserting federal-law claims in a federal forum," the judge "has a duty under Sixth Circuit authority to make an independent determination that the settlements are in the minors' best interest." *Hargrove*, 2022 WL 188190, at *3 (citing *Green*, 111 F.3d at 1301–02).

Does *Green* bind this Court's analysis? There the Court of Appeals addressed a minor's settlement of both federal claims and supplemental state-law claims. *See* 111 F.3d at 1299. But the opinion didn't answer the choice-of-law question—which law controls?—at least not explicitly. Rather, it held that the district judge wasn't

---

[3] The text of K.R.S. § 387.278(1), reproduced here in full, provides that a person having legal custody of a minor plaintiff may enter a settlement on that minor's behalf as long as:

"(a) A guardian or conservator has not been appointed for the minor;

"(b) The total amount of the settlement proceeds due to the minor, after reduction from the total settlement amount of all medical expenses, medical liens, all other liens, and reasonable attorney fees and costs, is twenty-five thousand dollars ($25,000) or less if paid in cash, by draft or check, by direct deposit, or by the purchase of a premium for an annuity;

"(c) The moneys payable under the settlement agreement will be paid as provided in subsections (3) and (4) of this section; and

" (d) The person entering into the settlement agreement on behalf of the minor completes an affidavit or verified statement that attests that the person … (1) [h]as made a reasonable inquiry and that to the best of the person's knowledge … [t]he minor will be fully compensated by the settlement; or … [t]here is no practical way to obtain additional amounts from the party or parties entering into the settlement agreement with the minor; and … (2) [u]nderstands and acknowledges that he or she is obligated by law to deposit the settlement directly into a restricted savings or other restricted investment account, or purchase an annuity, as provided in subsection (3) of this section."

3

bound to automatically accept a settlement agreement under Federal Rule of Civil Procedure 41; instead, the court could first look to a Michigan minor-settlement statute (which resembles Kentucky's in several respects) and examine whether the agreement served the "best interests" of the child. *See id.* at 1301.

*Green*, moreover, didn't parse whether Rule 41 or federal common law incorporated the state-law settlement-review standard. *See generally O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994). Neither did it parse whether a federal or a state standard applied to the minors' federal and state claims. Nor whether the settlement-approval rule was substantive or procedural, in *Erie* terms. *Green*, 111 F.3d at 1301. And Judge Lively's opinion spoke in permissive rather than mandatory terms regarding judicial-review authority: a "court *may* decline to permit a voluntary dismissal when required to avoid short-circuiting the judicial process, or to safeguard interests of persons entitled to the court's special protection." *Id.* Given the absence of attention to the precise question at issue—what law supports judicial review of minors' settlements in federal court—the Court is loath to read the *Green* approach too stringently and treat as binding caselaw that was merely "accidental." *See* Eric E. Murphy, *The Problem of Accidental Law*, (speech given Apr. 24, 2024, in Washington, D.C.) (unpub. copy on file) (critiquing the development of binding precedent through unreasoned reliance on prior decisions, particularly when courts treat dicta or underanalyzed propositions as holdings). In short, the law of the Sixth Circuit does not clearly dictate whether state or federal law governs (or even requires) minor-settlement review before dismissal of federal- and supplemental state-law claims.

So what is the rule of decision: is the judicial-approval function substantive (such that state law applies to the state claims) or procedural (such that federal law applies to all claims)? Although the question is close, the state settlement-review provision is best considered substantive law that applies to the state claims. The criteria used to evaluate the settlement under K.R.S. § 387.278(1) poses questions of substantive law: Who controls the money? When may it be spent? What property or currency or financial instruments may it be invested in?

These considerations differ meaningfully from those typical of procedural questions—when a jury trial is required, what service suffices, and so forth. They are not mere questions of process or timing; they go directly to control of property and the legal obligations of those who manage it. In short, they are bound up with state-created rights and fiduciary duties—and therefore fall squarely within the domain of substantive state law. *See Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 575 (6th Cir. 2008) ("Whether a state law provision is substantive or procedural depends … on whether that particular provision either creates rights and obligations or is so 'bound up with state-created rights and obligations' that it must be considered substantive." (quoting *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 535 (1958))). Yes, the question can be viewed as a "procedural" prerequisite to dismissal—but that step requires a substantive determination of who gets what, not a procedural determination of who can be heard and when.

Other courts addressing similar situations outside the Sixth Circuit have adopted a blended approach that accounts for both federal and state law. *See, e.g.*, *Greenberg*, 2021 WL 1753640, at *2 (evaluating minor's settlement of federal- and state-law claims against both federal and state standards). This was the approach endorsed by the parties during the hearing (DN 162) on this motion: the Court should apply the state statute to state-law claims and the perceived federal "best interests" standard to the resolution of federal-law claims. Such an effort to avoid an *Erie*-like question by harmonizing state and federal standards finds at least some purchase in the Supreme Court's caselaw. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 428 n.7 (1996) ("Federal courts have interpreted the Federal Rules … with sensitivity to important state interests and regulatory policies."); *id.* at 436–37 (rejecting "one-or-the-other choice" because "the principal state and federal interests can be accommodated").[4]

Is such harmony possible here? Several reasons suggest the answer is not so simple. First, the federal and state standards are related, but hardly identical. Federal caselaw in this Circuit generally applies a holistic "interests of the child" analysis and lacks any particular procedural requirements for lawyers, judges, or party representatives. *See Green*, 111 F.3d at 1301. The state statute, by contrast, contains specific requirements regarding the amount, destination, and treatment of funds supplied to a minor. Ky. Rev. Stat. § 387.278(1)(b)–(d). Should a representative attest to compliance with these rules but later renege (say, by using the minor's funds for another purpose), contempt of court could follow. That's not as clear under a retrospective federal ruling, at least not absent a prescriptive injunction of the district court's own creation.

Second, to the extent the parties envisioned applying the state statute to the state claims only, that bifurcated approach runs into practical obstacles. The settlement (at least as currently presented to the Court) doesn't allocate consideration between state and federal claims, or otherwise distinguish between the two, in a manner that would permit the Court to apply separate legal standards. (At least not in the reasoned and articulable manner that judicial decisionmaking ordinarily demands.)

But some version of that conundrum appears inevitable. Although state substantive law plainly provides a rule of decision that would apply to the state claims, a single settlement resolves both federal and state claims. And federal law apparently has little if anything to say about what law applies when reviewing settlements involving minors who raise federal and state claims.

---

[4] *But see Gasperini.*, 518 U.S. at 468 (Scalia, J., dissenting) ("It is simply not possible to give controlling effect both to the federal standard and the state standard" so "the court has no choice but to apply the Federal Rule, which is an exercise of what we have called Congress's 'power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either.'") (quoting *Hanna v. Plumer,* 380 U.S. 460, 472 (1965)).

5

The interests-of-the-child review envisioned by *Green*, for example, discusses voluntary dismissals under Rule 41(a). But it invokes "inherent" judicial authority, not any application of the text of that rule. To the contrary, the Court of Appeals explains why, in its view, a district judge's "inherent power to deny dismissal" might *prevent* "dismissal without a court order" under Rule 41(a)(A)(ii) *despite* a "stipulation of dismissal signed by all parties who have appeared." 111 F.3d at 1300. So whatever might be the source of this inherent federal judicial authority, it surely wasn't the text of Rule 41. *Id.* ("While a properly stipulated dismissal under Rule 41(a)(1)(ii) [*sic*] is self-executing and does not require judicial approval, a court may decline to permit a voluntary dismissal when required to avoid short-circuiting the judicial process, or to safeguard interests of persons entitled to the court's special protection."). How could this sort of judge-made custom possibly displace a duly enacted state statute? *Cf. Hanna*, 380 U.S. at 473; *see also Shady Grove*, 559 U.S. at 418 (Stevens, J., concurring in part and concurring in the judgment) ("[F]ederal rules must be interpreted with some degree of sensitivity to important state interests and regulatory policies.") (citation omitted).

And the only federal statutes that the parties cite in this litigation—42 U.S.C. §§ 1983, 1985(3), *see* Second Amended Complaint (DN 8) at ¶¶ 6–7—provide no requirement for judicial approval of settlements at all.[5] Nor does any especially federal interest turn on the Court's choice of settlement-approval methodology. *See Nice*, 98 F. Supp. 2d at 669. To the contrary, "under our federal system, matters of concern to the family unit, including the well-being of minors, traditionally have been of utmost interest to the individual states." *Id.*

The fairest reconciliation of these sources of law is reliance on state substantive law—directly with respect to the state claims, and indirectly with respect to any lingering judicial duty to review the dismissal of federal claims. In somewhat similar circumstances, federal courts addressing gaps in federal law have not concocted novel rules of decision based on any inherent common-law-making authority, but have instead looked or deferred to a state standard to fill a gap such as this. "[W]here neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, 'state law must govern because there can be no other law.'" *Shady Grove*, 559 U.S. at 416 (quoting *Hanna*, 380 U.S. at 471–72 and citing Bradford R. Clark, Erie*'s Constitutional Source*, 95 CAL. L. REV. 1289, 1302, 1311 (2007)). And this approach is at least reconcilable with, if not identical to, *Green*'s reliance on Michigan's settlement-approval statute as the substantive law that operated in tandem with Federal Rule 41.

---

[5] Importantly, this is not a case in which the Court is called upon to award attorney's fees. If that were the case, 42 U.S.C. § 1988(b) would supply guidance. Instead, the Court here is called upon to assess the reasonableness of an already agreed-to settlement—a distinct question. *Cf. Nice*, 98 F. Supp. 2d at 669 & n.4 (E.D. Pa. 2000).

\* \*

Applying Kentucky law, therefore, the Court concludes that no judicial approval of this settlement is required.

As listed above, K.R.S. § 387.278 imposes four general requirements for a custodian to settle litigation on behalf of a minor. *See* above at n.3. The record shows that the parties have complied with those requirements. First, no guardian or conservator has been appointed for the Minor Plaintiffs. Second, sealed affidavits confirm that the total settlement amount is less than $25,000 for each. Third, the parties attest that the funds will be tendered in compliance with the procedures outlined in §§ 387.278(3)–(4). *See* DNs 163 (Plaintiff Z.F.) & 163-1 (Plaintiff B.E.).[6] And fourth, the settling parties agreed during the hearing that the settlements will fully compensate the minors for their injuries and that they will deposit the settlement money into a restricted account consistent with the law's requirements. *See* DNs 163 at 1 & 163-1 at 1.

When the parties attest that those conditions are met, the statute requires no judicial approval for the settlement to take effect or to open appropriate restricted accounts to deposit settlement funds. *See* K.R.S. § 387.278(6)(a) ("If a financial institution or other entity elects to open a restricted savings or other restricted investment account, or issue an annuity, pursuant to this section, a court order shall not be required to open the account or issue the annuity."); *id.* § 5(a) ("A signed settlement agreement entered into on behalf of the minor in compliance with subsection (1) of this section: [i]s binding on the minor without the need for court approval or review.") (cleaned up).

In addition to the text, the statute's context and precursors make clear that the legislature displaced any residual state-common-law requirement for judicial approval. The Kentucky Supreme Court held in 2019 that "[t]he general common law rule in Kentucky is that parents have no right to compromise or settle their child's cause of action as that right exists in the child alone, and parents have no right to enter into contracts on behalf of their children absent special circumstances." *Miller as Next Friend of E.M. v. House of Boom Kentucky*, 575 S.W.3d 656, 660 (Ky. 2019). The Court then cited another statute—KRS § 387.280—which, at the time, "slightly change[d] this portion of the common law" to permit parents and the custodians of disabled persons to receive settlements of less than $10,000 with judicial approval. *Id.* at 661 n.7. In 2022, the Kentucky legislature passed a new law—now codified as KRS § 387.278—which left in place the requirement for judicial approval for settlements involving disabled persons, but created a new pathway that permitted parents to enter settlements of less than $25,000 on behalf of their children. *See* KY.

---

[6] K.R.S. §§ 387.278(3)–(4) provide that settlement money must be paid into a restricted savings, trust, or similar account and not "withdrawn, removed, paid out, or transferred" to anyone, including the minor, absent certain conditions. The motion states only that the parties will comply with these statutory requirements, without describing the timing of payment or nature of the accounts.

7

2022 SESSION LAWS CHAPTER 182, HB 170 (codified as KRS § 387.278). This sort of statutory history buttresses the most natural reading of the statute's plain text: whatever common-law requirements existed before, the 2022 statute abrogated them for settlements of less than $25,000 so long as the four statutory criteria are satisfied. *See generally BNSF Railway v. Loos*, 586 U.S. 310, 329–30 (2019) (Gorsuch, J., dissenting) (explaining that "the record of enacted changes Congress has made to the relevant statutory text over time" is "the sort of textual evidence everyone agrees can sometimes shed light on meaning").

With the statute's requirements met and in the absence of any Kentucky common law to apply, the Court has nothing to do, and the parties' settlement agreement is self-executing. Out of an abundance of caution, particularly given the recent changes in Kentucky state-law on this point, however, the Court notes that nothing in the record before it suggests collusion or other improper conduct that would cast doubt on the appropriateness of the resolution of the minors' state- and federal-law claims—even if state common law or federal "inherent authority" to review the resolution persisted. *Cf. Green*, 111 F.3d at 1301.

## ORDER

Given the lack of statutory necessity (or authority) to approve a settlement that satisfies the requirements of KRS § 387.278, the Court acknowledges the effectiveness of the parties' settlement agreement, denies as moot the motion to approve the settlements (DN 157) with respect to the state-law claims, grants the motion with respect to the federal-law claims, and dismisses the minor plaintiffs from the case under Rule 41 or, in the alternative, Rule 21.